### Hiram K. Goodale v. Ansil R. Patterson

*Married woman's absolute property—Record of assignment of mortgage—
Notice, to purchaser of mortgager's interest, of assignment
by mortgagee.*

Where a man and wife unite in conveying property and the grantee gives back to each an individual mortgage thereon, the wife becomes absolute owner of her mortgage in her own right, and can dispose of it as she pleases and as if she were single.

Comp. L. § 4235, providing that recording the assignment of a mortgage shall not be such notice of the assignment as to invalidate payments made by the mortgager to the mortgagee, applies where the payment, though not actually made by the mortgager, is so made as to release him from liability, as by an arrangement between all parties that he should deed the land to the person making the payment.

Where it is understood between a mortgager and mortgagees that the mortgager shall convey to such person as one of the mortgagees shall designate, an assignment by the other mortgagee will not affect a purchaser who, in good faith, takes conveyance from the mortgager, without notice or knowledge of such assignment; the assignee is subject to the same equities as the assignor, and if the assignor afterwards gives a discharge of the mortgage to the purchaser the latter is entitled to regard it as a regular and valid release thereof.

Appeal from Eaton.   (Hooker, J.)   Oct. 5.—Oct. 17.

Bill to clear title.   Defendant appeals.   Affirmed.

*Sagendorph & Powers* for complainant.

*McPeek & Tinkham* for defendant.

Graves, C. J.   In 1868 Norman Foster was the owner of forty acres of land in Eaton county, subject to a mortgage given to one Adams for $225.   He was living on bad terms with his wife and they agreed to separate, and by advice of counsel they united in a conveyance of the land to John O'Neil, who executed to each a mortgage thereon, without covenants.   The mortgage to Mrs. Foster was for $500, and that to her husband was for $725.   It was orally

understood, as a part of the scheme, that O'Neil should be entitled to pay the mortgages and hold the land, or should convey to such person as Foster should designate, on the terms of having the mortgages satisfied. This arrangement did not bring peace. Proceedings for divorce were commenced, and a prosecution for bigamy. Neither was carried through. For a year or two there was much litigious strife, and different attorneys were concerned. During much of the contention the defendant acted for Mrs. Foster and Mr. Sagendorph for her husband. The land deeded to O'Neil was regarded as the fund on which counsel were to rely. The conveyance to him, and the mortgages back, were given on the 18th of March, 1869.

Mrs. Foster recorded her mortgage on the 16th of April. According to the verbal arrangement, and in point of substance, O'Neil was made the custodian of the title, in order to divide the interest between Mr. and Mrs. Foster. His actual position was rather that of a trustee than that of an absolute purchaser.

March 11, 1870, Mrs. Foster made an absolute assignment of her mortgage to the defendant, and the assignment was placed on record on the 3d day of May following. Just prior to that date Mr. Sagendorph, who had control of Foster's interests and also had interests of his own, negotiated a sale of the farm to complainant, but the agreement was not in writing. May 7th, being four days after the record of the assignment from Mrs. Foster to defendant, Mr. Sagendorph concerted with Mrs. Foster for a disposition of the mortgage. He paid her a sum of money, but how much is not explained, and agreed to give her certain professional assistance ; and in return she gave him an assignment of the mortgage and also a discharge of it. His purpose was to be able to treat the mortgage as satisfied in case the oral trade to complainant should be carried out, and on the other hand, if that was not done, to regard the instrument as a purchased security remaining in full force. The money paid was his own; but he appeared to O'Neil as the representative of Foster. It is not intended to intimate, in saying this, that

he commited the least duplicity. There is no proof of any deception or unfairness towards O'Neil. The latter was ready and willing to convey as Foster might desire, on condition of getting rid of the mortgages, and Sagendorph requested him to convey to complainant and he complied. He quitclaimed to complainant, and the deed and discharge of the mortgage to Mrs. Foster were immediately recorded.

Complainant was not informed of the assignment to Sagendorph and the latter destroyed it; and neither complainant nor Sagendorph had any actual notice of the assignment to defendant. They both supposed that the discharge by Mrs. Foster was authorized and regular, and that the record of it would operate to cancel the mortgage.

After the lapse of some little time the complainant ascertained the existence of the assignment to the defendant, and a request was made upon him for a discharge, accompanied by a tender of five dollars, but he refused. A proceeding by petition was likewise instituted to enforce a discharge, but nothing seems to have been affected by it. Finally, in 1881, this bill was filed. It alleges that the mortgage title claimed by the defendant constitutes a cloud on the title of complainant, which equity requires to be removed. It also prefers a demand for damages under the provision relating to the compulsory discharge of mortgages.

The circuit judge decided that the mortgage should be discharged, but he based his decision wholly on the ground that as Mrs. Foster was a married woman, and her assignment to the defendant was in consideration of future legal services, it was a disposition she was not competent to make.

We are not able to uphold the decree on this ground. If the theory were sound, the bill would not authorize it. But the principle does not appear to be tenable. At the time she made her assignment to the defendant, Mrs. Foster was the absolute owner of the mortgage in her own right, and she had all the power of a feme sole to dispose of it as she pleased. She could grant it as she chose, or even give it away at her election.

Can the relief given be sustained on any other view? It is argued by complainant's counsel that Comp. L. § 4235, is sufficient. It is there provided that "the recording of an assignment of a mortgage shall not, in itself, be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee."

It is objected that this provision cannot apply, because the payment here was not by O'Neil, the mortgagor. This is true; but it is true rather in form than in substance. When O'Neil received the title and executed the mortgage it was made, as we have seen, an alternative that he should thereafter convey as Foster should appoint, provided the mortgages should be satisfied; and that condition did not contemplate that he should pay the mortgages out of pocket. The arrangement meditated that the means to get rid of the mortgages, in that event, should proceed from some other source. But the effect as respected him was to be the same as though he paid the money. His mortgages were to be got rid of, but by means of his deeding the land on payment by another, and in lieu of such payment. His conveyance was to stand in the place of payment, so far as he was concerned, and a third party was to make the payment. This was only another way of payment by himself, and we think the transaction, as carried out, was within the spirit and equity of the statute.

The equities of Sagendorph are not in question. The inquiry relates to the rights of complainant and defendant. The complainant took his title from O'Neil, the mortgagor, who had no notice of any sort of the assignment to the defendant, and was not chargeable with any, and complainant had no notice and acted in good faith. He was not aware of the nature of the dealing between Sagendorph and Mrs. Foster. He was the privy of O'Neil, the mortgagor, and not of Mrs. Foster, the mortgagee. Mrs. Foster was a party to the original arrangement, and was in equity subject to its conditions. She knew in what way the property was held by O'Neil, and in what way and on what terms he was

authorized to convey. The defendant was in privity with her, and he was subject to the same equities in reference to that arrangement to which she was subject. He was not in a position to take higher ground than she could. In view of all the facts, the complainant was entitled to assume that the discharge in the hands of Sagendorph ready for record was entirely regular, and a valid satisfaction of the mortgage.

We think the decree should be affirmed with costs.

The other Justices concurred.